

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 NOV 21  PM 4: 24

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

MIKE SHELTON, #132296                                    CIVIL ACTION

VERSUS                                                   ~~NO. 04-1092~~ 05-1852

JAMES M. LEBLANC, WARDEN                                 SECTION C
DIXON CORRECTIONAL INSTITUTION

## ORDER AND REASONS

Before this Court is a petition for habeas corpus relief by Mr. Mike Shelton

("Petitioner"), pursuant to 28 U.S.C. § 2254. As grounds for relief, Petitioner claims that: (1) he

was denied effective assistance of counsel; (2) the trial court erroneously denied him an

evidentiary hearing on the issue of whether his counsel was ineffective; (3) the state withheld

evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); (4) his guilty plea was not

knowingly, voluntarily, and intelligently made; (5) the trial court erroneously denied his right to

withdraw his guilty plea; and (6) he was denied his right to confront his accuser.

Upon review of the record, this Court has determined that Petitioner's habeas corpus

petition does not present grounds for the relief requested. For the reasons set forth below, this

petition is DENIED.

## I. Background and Procedural History

Petitioner, Mr. Mike Shelton, is a state court prisoner incarcerated at the Dixon



___ Fee_____
_X_ Process_____
___ Dktd_____
___ CtRmDep_____
___ Doc. No _____

Correctional Institution in Jackson, LA.[1] On December 13, 2000, Mr. Shelton pled guilty to attempted first degree robbery in violation of La. R.S. 14:(27):64.1[2] and status as a second offender pursuant to La. R.S. 15:529.1.[3] He was sentenced immediately thereafter to serve 15 years in prison.[4]

Mr. Shelton states that immediately after he pled guilty and was sentenced, the owner of the bar that was robbed, Mr. Hollis Magee, came to court and signed an affidavit stating that he

---

[1] Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus By a Person In State Custody, *Shelton v. Leblanc*, No. 05-1852, Apr. 12, 2005. The petition is signed and dated on March 12, 2005. The Application to Proceed Without Preparyment of Fees and Affidavit was signed on April 12, 2005 and was certified by the Dixon Correctional Institution on May 5, 2005. The Court will treat April 12, 2005 as the date the petition was filed to determine timeliness, as it represents the earliest date that Petitioner could have presented his petition to prison officials for mailing, and therefore, the earliest date this Court could consider the petition as filed for statute of limitations purposes.

[2] State Rec., Vol. 1 of 3, Waiver of Rights - Plea of Guilty Form, *State v. Shelton*, No. 415-294, Dec. 13, 2000; Sentencing Information, *State v. Shelton*, No. 415-294, Dec. 13, 2000.

[3] State Rec., Vol. 1 of 3, Waiver of Rights - Plea of Guilty; Multiple Offender, *State v. Shelton*, No. 415-294, Dec. 13, 2000.

[4] State Rec., Vol. 2 of 3, Transcript of the Plea of Guilty, Multiple Bill Hearing, and Sentencing, *State v. Shelton*, No. 415-294, Criminal District Court of Louisiana, Dec. 13, 2000, pp. 3, 6.

did not wish to testify against Mr. Shelton and did not wish to pursue charges.[5] The affidavit, while signed by Mr. Magee, does not have the defendant's name or case number on it. Further, Mr. Magee was not the victim of the robbery, nor was he a witness to the crime.[6] Rather, his employee, Mr. Albert Lacey, was the victim and witness. Mr. Shelton argues that Mr. Lacey was present in court and ready to testify on December 13, 2000 if the case went to trial, but that Mr. Lacey left the court prior to Mr. Shelton accepting the plea,[7] and therefore would not have been present to testify against Mr. Shelton if he decided to go to trial.

For these reasons, Mr. Shelton filed a motion to withdraw his plea in the state district court on December 19, 2000.[8] Louisiana's Criminal District Court denied Mr. Shelton's request to withdraw his guilty plea on March 28, 2001.[9] Mr. Shelton filed a writ to the Louisiana Fourth

---

[5] State Rec., Vol. 1 of 3, Affidavit of Mr. Hollis Magee, December 13, 2000.

[6] State Rec., Vol. 2 of 3, Transcript of Hearing, *State v. Shelton*, Jan. 19, 2001, p. 4.

[7] *Id.* This Court notes that it is unclear whether Mr. Lacey left the courtroom or the building. This Court also notes that Petitioner has presented to evidence that Mr. Lacey would not have been available to testify had Petitioner decided to go to trial.

[8] State Rec., Vol. 1 of 3, Motion to Withdraw Plea, *State v. Shelton*, No. 415-294, Dec. 19, 2000.

[9] State Rec., Vol. 2 of 3, Criminal Minute, *State v. Shelton*, No. 415-294, Mar. 28, 2001.

Circuit Court of Appeal on May 24, 2001, requesting that the appellate court review the district court's final judgment.[10] He supplemented this application with an application to file an out-of-time appeal on June 1, 2001.[11] Louisiana's Fourth Circuit Court of Appeal upheld the trial court's denial of Mr. Shelton's application on June 20, 2001.[12] Mr. Shelton subsequently filed an application for supervisory writs with the state supreme court on August 21, 2001.[13] The

---

[10] State Rec., Vol. 3 of 3, *State v. Shelton*, No. 01-K-0980. In the meantime, Mr. Shelton filed a motion for the production of documents on April 5, 2001 in the state district court. (State Rec., Vol. 1 of 3, Motion for Production of Documents, *State v. Shelton*, No. 415-294, filed Apr. 5, 2001.) The Court cannot find a ruling on this matter by the state district court. Mr. Shelton subsequently filed an application for supervisory writ to order the district court to produce his multiple bill hearing transcript on May 3, 2001. (State Rec., Vol. 3 of 3, Application for Writs, Fourth Circuit Court of Appeal, No. 01-K-0825, May 3, 2001.) The state court of appeal granted Mr. Shelton's writ in part, ordering that he be provided with a copy of his *Boykin* transcript on May 22, 2001. (State Rec., Vol. 1 of 3, Writ Granted In Part, *State v. Shelton*, No. 415-294, Louisiana Fourth Circuit Court of Appeal, May 22, 2001.)

[11] State Rec., Vol. 3 of 3, Application for Out of Time Appeal, *State v. Shelton*, No. 01-K-0980, filed June 1, 2001. The date stamp on the application is mostly illegible, although it appears as though the stamp reads June 1, 2001.

[12] State Rec., Vol. 2 of 3, Writ Denied, *State v. Shelton*, No. 415-294, Louisiana Fourth Circuit Court of Appeal, June 20, 2001.

[13] State Rec., Vol. 2 of 3, Applying for Supervisory Writ, *State v. Shelton*, No. 01-KH-2395, filed Aug. 21, 2001.

-4-

application was denied on May 24, 2002.[14]

Mr. Shelton filed a state application for post-conviction relief on December 7, 2002.[15] The Louisiana District Court denied Mr. Shelton's state application for post-conviction relief on December 23, 2002.[16] Mr. Shelton appealed the denial, which the Louisiana Fourth Circuit Court of Appeal denied on March 25, 2003.[17] Mr. Shelton filed a writ of certiorari to the Louisiana Supreme Court on April 22, 2003,[18] which was denied on May 14, 2004.[19]

---

[14] State Rec., Vol. 2 of 3, Denial of Writ, *State v. Shelton*, No. 01-KH-2395, Louisiana Supreme Court, May 24, 2002.

[15] State Rec., Vol. 1 of 3, Application for Post-Conviction Relief, *Shelton v. Stalder*, No. 415-294, Dec. 7, 2002.

[16] State Rec., Vol. 2 of 3, Judgment on Application for Post-Conviction Relief, *State v. Shelton*, No. 415-294, Criminal District Court of Louisiana, Dec. 23, 2002.

[17] State Rec., Vol. 2 of 3, Writ Denied, *State v. Shelton*, No. 415-294, Louisiana Fourth Circuit Court of Appeal, 03-K-115, Mar. 25, 2003. The Court cannot find Mr. Shelton's appeal in the record.

[18] State Rec., Vol. 2 of 3, Original Application for Writ of Certiorari, *Shelton v. State*, No. 03-KH-1301, Louisiana Supreme Court, received by court May 8, 2003; State Rec., Vol. 2 of 3, Cover Letter from Michael Shelton to Clerk of Louisiana Supreme Court re Filing of Pleading, Apr. 22, 2003.

[19] State Rec., Vol. 2 of 3, Denial of Writ, *Shelton v. State*, No. 03-KH-1301, May 14, 2004

Mr. Shelton filed a second state application for post-conviction relief on July 27, 2004.[20] The Court cannot find any evidence in the record to indicate that his second application has been ruled upon. Subsequently, Mr. Shelton filed this federal application for habeas corpus on April 12, 2005.

## II. Timeliness

Petitioner's habeas petition is timely. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires that a petitioner bring his Section 2254 claims within one year of the date on which his conviction or sentence became final. 28 U.S.C. 2244(d). Pursuant to 28

---

[20] State Rec., Vol. 2 of 3, Uniform Application for Post-Conviction Relief, *Shelton v. LeBlanc*, signed July 27, 2004. In the interim, Mr. Shelton also filed a motion to reconsider his sentence with the Louisiana district court on January 27, 2004. (State Rec., Vol. 1 of 3, Motion and Order; Ruling on Motion to Reconsider Sentence, *State v. Shelton*, No. 415-294, Jan. 27, 2004.) There is no evidence in the record of the state district court's ruling on the motion. Mr. Shelton filed another application for supervisory writs to the Fourth Circuit on March 30, 2004, which was denied on May 11, 2004. (State Rec., Vol. 3 of 3, Application for Writs, Motion and Order for Ruling, Reconsideration of Sentence, *Shelton v. State*, No. 04-K-0528, Mar. 30, 2004; State Rec., Vol. 2of 3, Writ Denied, *State v. Shelton*, No. 415-294, Louisiana Fourth Circuit Court of Appeal, May 11, 2004.) Mr. Shelton filed a motion for the production of documents on July 6, 2004. (State Rec., Vol. 2 of 3, Motion and Order for Production of District Attorney Files Pursuant to LSA-R.S. 44:3, *Shelton v. Jordan*, No. 415-294, July 6, 2004.) Mr. Shelton also filed a motion for the correction of his sentence with the state district court, which was received on February 25, 2005. (State Rec., Vol. 3 of 3, Motion for Correction of Illegally Lenient Sentence Pursuant to LSA-C.Cr.P.Art. 882, *Shelton v. State*, No. 415-294, received Feb. 25, 2005.)

U.S.C. § 2244(d)(1)(A), Petitioner's one-year limitation period for seeking federal habeas corpus

relief commenced running from the date on which that judgment "became final by the conclusion

of direct review or the expiration of the time for seeking such review." Petitioner's conviction

became final on August 22, 2002.[21]

On this date, the one-year statute of limitations for filing a federal habeas corpus petition

began to run. *See Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003); *Ott v. Johnson*, 192

F.3d 510, 513 (5th Cir. 1999). However, the AEDPA's one-year statute of limitations is tolled for

the period during which a properly filed application for state post-conviction relief or other

collateral review attacking a conviction or sentence is pending in state court. *See Fields v.*

*Johnson*, 159 F.3d 914 (5th Cir.1998); 28 U.S.C. § 2244(d)(2). From December 7, 2002 until

May 14, 2004, a period of 521 days, the statute of limitations was tolled while Mr. Shelton's first

state application for post-conviction relief was pending in state court. Seventy-four (74) days

later, on July 27, 2004, the statute of limitations resumed tolling, when Mr. Shelton filed his

second application for post-conviction relief. Mr. Shelton filed this federal application on April

---

[21] August 22, 2002 is ninety days (the time which Mr. Shelton would have had to appeal the decision to the United States Supreme Court) after May 24, 2002, the day that the Louisiana Supreme Court denied Mr. Shelton's application to review the district court's denial of his motion to withdraw his guilty plea.

12, 2005, prior to obtaining a state court ruling on his second state application, and while the statute of limitations period was still tolling.

After Mr. Shelton's conviction became final, and prior to filing his application for state post-conviction relief, a period of 107 days elapsed. A period of 74 days elapsed between the denial of Mr. Shelton's first state application and the filing of his second state application. Because only 181 days elapsed, Mr. Shelton's federal petition is considered timely.

## II. Exhaustion

Pursuant to 28 U.S.C. § 2254(b)(1)(a), a petitioner must normally first exhaust his remedies in state court before seeking *habeas corpus* relief from the federal courts. "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts." *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) (internal quotation marks omitted). Generally, the exhaustion requirement is satisfied only when the grounds urged in a federal petition were previously presented to the state's highest court in a procedurally proper manner according to state court rules. *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). The Court acknowledges that it is arguably unclear whether petitioner has properly exhausted his claims in state court.[22]

_____

[22] The Petitioner has a second state post-conviction application pending in state court. Based on a thorough review of the record, the Court found that the Petitioner raised all of his claims, except his argument that he was improperly denied an evidentiary hearing on his post-

Nevertheless, 28 U.S.C. § 2254(b)(2) "allows a federal court, in its discretion, to *deny habeas relief* on the merits, regardless of whether the applicant has exhausted state remedies" and whether exhaustion is waived by the state.  *Jones v. Jones*, 163 F.3d 285, 299 (5th Cir. 1998) (emphasis in original).  In this case, in the interest of judicial economy, this Court will deny Petitioner's claims on the merits.

## III. Ineffective Assistance of Counsel and Trial Court's Denial of Evidentiary Hearing

Mr. Shelton argues that his attorneys were ineffective because they provided inadequate counsel when they advised him to accept the guilty plea in light of the fact that the complaining witness may have left the courthouse and been unable to testify had Mr. Shelton demanded a trial.

In general, a two-pronged test is employed with regard to a claim of ineffective assistance of counsel. First, the petitioner "must show that counsel's performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, the petitioner "must show that the deficient performance prejudiced the defense." *Id.*

Under the deficient performance prong of the *Strickland* test, "when a convicted

---

conviction claim of ineffective assistance of counsel, on either direct review or in his first state application for post-conviction relief. Thus, the Court can consider Petitioner's claims on the merits, in spite of the fact that he has a second state application pending.

defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that

counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466

U.S. at 687-688. "It is necessary to 'judge ... counsel's challenged conduct on the facts of the

particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364,

371 (1993) (quoting *Strickland*, 466 U.S. at 690). "An attorney's performance, which enjoys a

strong presumption of adequacy, is deficient if it is objectively unreasonable." *United States v.*

*Walker*, 68 F.3d 931, 934 (5th Cir. 1995), *cert. denied*, 516 U.S. 1165 (1996) (quoting *United*

*States v. Acklen*, 47 F.3d 739, 742 (5th Cir. 1995)). The petitioner must prove that the conduct of

trial counsel fell below the constitutional minimum guaranteed by the Sixth Amendment. *United*

*States v. Faubion,* 19 F.3d 226, 228 (5th Cir. 1994). Analysis of counsel's performance must take

into account the reasonableness of counsel's actions in light of all the circumstances. *Strickland*,

466 U.S. at 688-689. Petitioner "carries the burden of proof ... and must overcome a strong

presumption that the conduct of his trial counsel falls within a wide range of reasonable

professional assistance." *Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986), *cert. denied*,

479 U.S. 1021 (1986); *Hayes v. Maggio*, 699 F.2d 198, 201-202 (5th Cir. 1983).

    To prove prejudice under the *Strickland* standard, Petitioner "must show that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

-10-

would have been different." *Strickland*, 466 U.S. at 688-689. The *Strickland* court defined a

reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id.*,

at 694. When the issue is the voluntariness of a guilty plea,  the petitioner "must show that there

is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would

have insisted on going to trial." *Joseph v. Butler*, 838 F.2d 786, 791 (5th Cir. 1988) (quoting *Hill*

*v. Lockhart*, 474 U.S. 52, 59  (1985)).

      Thus, it is Mr. Shelton's burden to demonstrate (1) that his counsel's conduct was

objectively unreasonable; and (2) a reasonable probability that, but for counsel's errors, he would

not have pled guilty and would have demanded a trial. Petitioner has not demonstrated that his

counsel's actions were objectively unreasonable. Petitioner has presented no evidence showing

that, by urging him to accept the plea, his lawyer's conduct was objectively unreasonable or that

he was misadvised. Petitioner, if convicted at trial, was facing the possibility of a lengthy forty

year sentence for first degree armed robbery, plus an additional forty years as a multiple offender.

*See* La. R.S. 14:64.1; La. R.S. 15:529.1. Regardless of whether Mr. Lacey was present at the time

Mr. Shelton pled guilty, and in spite of the fact that Mr. Magee did not want to testify against Mr.

Shelton, pleading guilty was still a reasonable option in light of the possible sentence that Mr.

Shelton faced. The fact that Mr. Lacey had left the court before Mr. Shelton pled guilty does not

mean that Mr. Lacey would not have returned to testify had Mr. Shelton demanded a trial or that

the trial court would not have granted the state a continuance if Mr. Lacey could not be located.[23]

Similarly, the fact that Mr. Magee did not want to testify against Mr. Shelton does not mean that

Mr. Lacey would not have returned to testify against Mr. Shelton at trial. Further, Mr. Magee was

not the victim and did not witness the robbery. The affidavit that Mr. Magee signed in the record

does not include the case number or Mr. Shelton's name. Moreover, when asked for his reasons

for not wanting to testify, Mr. Magee stated that he "knew him," "prayed over it," and "decided

to drop the charges charged on him and allow him another chance."[24] He did not state that there

was no robbery or that Mr. Shelton did not commit the robbery. Last, Mr. Shelton has not

presented an affidavit from the complaining victim, Mr. Lacey, indicating that he did not want to

testify against Mr. Shelton and drop charges. For these reasons, the Court finds that Mr. Shelton

---

[23] Based on the transcript of the hearing on whether to withdraw the guilty plea, it is unclear exactly where Mr. Lacey went. When asked where the bartender was that day, the state answered that "[h]e was here and present and ready to testify," and that "he went to the back but he was on -- while we picked the a Jury." State Rec., Vol. 2 of 3, Transcript of Hearing, *State v. Shelton*, Jan. 19, 2001, p. 4. There is no further detail in the record as to where Mr. Lacey went and whether he could have come back immediately if Mr. Shelton demanded a trial.

[24] State Rec., Vol. 2 of 3, Transcript of Hearing, *State v. Shelton*, Jan. 19, 2001, p. 3.

has not demonstrated that his counsel was ineffective,[25] and the Court denies this claim on the merits.

Relatedly, Mr. Shelton argues that the state court erroneously denied him an evidentiary hearing on the issue of whether his counsel was effective. It is well established law in the Fifth Circuit that in reviewing state evidentiary rulings in habeas corpus petitions, federal courts "do not sit as a super state supreme court to review error under state law." *Bridge v. Lynaugh*, 838 F.2d 770, 772 (5th Cir. 1988) (citing *Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th Cir. 1984); *Skillern v. Estell*, 720 F.2d 839, 852 (5th Cir. 1983), *cert denied*, 469 U.S. 873 (1984)). Therefore, this Court may not consider any of Petitioner's arguments that are based on purported violations of Louisiana law during state court proceedings and this Court dismisses Petitioner's claim that the state trial court erroneously denied him an evidentiary hearing on the issue of whether his counsel was effective as without merit.

**IV. *Brady* Violation**

Mr. Shelton also argues that the state withheld evidence in violation of *Brady v.*

---

[25] It is unclear whether Petitioner could have established that, but for counsel's advice to accept the guilty plea, he would have demanded a trial. There was no guarantee that Mr. Lacey could not have been produced had Petitioner demanded a trial, and, given the lengthy sentence Mr. Shelton was facing if he went to trial, it would have been perfectly reasonable for Mr. Shelton to accept a plea.

*Maryland*, 373 U.S. 83 (1963) when it failed to tell him that the victim, Mr. Lacey, had left, and

that the owner of the bar, Mr. Magee, wanted to withdraw charges. In *Brady v. Maryland*, 373

U.S. 83 (1963), the United States Supreme Court held that a state violates a defendant's due

process rights when it fails to disclose to the defendant prior to trial "evidence favorable to an

accused . . . where the evidence is material." *Id.* at 87; *see also United States v. Agurs*, 427 U.S.

97, 106 (1976). There are three elements to a *Brady* claim: (1) the evidence must be favorable to

the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must

have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must be

"material," in other words, prejudice must have ensued from its non-disclosure. *Banks v. Dretke*,

540 U.S. 668, 691 (2004); *Strickler*, 527 U.S. at 281-82.

Petitioner cannot establish the elements of a *Brady* claim. The fact that Mr. Lacey left the

court before Mr. Shelton pled guilty is not evidence favorable to the accused, because it is not

exculpatory. The absence of a witness does not bear on a defendant's innocence or guilt. *See,*

*e.g., Amador v. Dretke*, 2005 WL 827092, *19 (W.D.Tx. 2005) (identifying exculpatory evidence

as evidence so important as to change the outcome of trial); *United States v. Nelson*, 1994 WL

705432, *1 (E.D. La. 1994) (holding that grand jury testimony indicating that defendant sold less

crack than witnesses testified to at trial was not exculpatory evidence); *United States v. Beasley*,

-14-

442 F.Supp. 1152 (D.C. La. 1977) (holding that notes made by prosecutors during interviews with certain individuals were not exculpatory of defendant within meaning of Brady rule because they did not tend to show that the defendant was innocent). Further, there is no indication in the record that Mr. Lacey could not have returned immediately had Mr. Shelton demanded a trial. The fact that Mr. Magee wanted to withdraw charges against Mr. Shelton is irrelevant. He was not the victim of the robbery, nor was he a witness, nor did his testimony at the hearing on the withdrawal of the guilty plea indicate that Mr. Shelton was innocent of the robbery.

Additionally, Petitioner has not shown that the state suppressed this evidence. It is well-settled in this Circuit that evidence is not "suppressed" within the meaning of Brady if the defendant either knew, should have known, or with the exercise of due diligence could have learned, of the essential facts permitting him to take advantage of the exculpatory evidence. *Kuntzer v. Cockrell*, 303 F.3d 333, 336 (5th Cir.2002), *cert. denied*, 536 U.S. 978, 123 S.Ct. 14, 153 L.Ed.2d 877 (2002) (*Brady* does not obligate the State to furnish a defendant with exculpatory evidence that is fully available to a defendant through the exercise of reasonable diligence). The fact that Mr. Magee wanted to withdraw charges against Mr. Shelton and the fact that Mr. Lacey may have left the courthouse was discoverable by defense counsel. Thus, this Court denies Mr. Shelton's argument that the state withheld material in violation of *Brady* on the

-15-

merits.

## V. Involuntary Plea and Denial of Right to Withdraw Guilty Plea.

Mr. Shelton argues that his guilty plea was not knowingly, voluntarily, and intelligently

made, and, relatedly, that the trial court erroneously denied his right to withdraw his guilty plea.

A plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v.*

*United States*, 523 U.S. 614, 618 (1998) (quoting *Brady*, 397 U.S. at 748). "The voluntariness of

a plea is determined by considering all of the relevant circumstances surrounding it." Fischer v.

Wainwright, 584 F.2d 691, 692 (5th Cir. 1978) (internal citations omitted).

Pleas are involuntary when induced by threats, improper promises, or misrepresentation.

*See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). A plea qualifies as intelligent

when the defendant enters the plea after receiving "real notice of the true nature of the charge

against him, the first and most universally recognized requirement of due process." *Bousley*, 523

U.S. at 618 (internal citations omitted). "Before the trial court may accept a guilty plea, the court

must ensure that the defendant 'has a full understanding of what the plea connotes and of its

consequence.'" *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir.1991) (quoting *Boykin v. Alabama*,

395 U.S. 238, 244 (1969)). "A guilty plea is invalid if the defendant does not understand the

nature of the constitutional protection that he is waiving or if he has such an incomplete

-16-

understanding of the charges against him that his plea cannot stand as an admission of guilt."

*James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995) (internal citations omitted). The "critical issue is

whether the defendant understood the nature and substance of the charges against him, and not

necessarily whether he understood their technical legal effect." *Taylor*, 933 F.2d at 329.

A guilty plea "entered by one fully aware of the direct consequences. . . must stand unless

induced by threats (or promises to discontinue improper harassment), misrepresentation

(including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature

improper as having no proper relationship to the prosecutor's business (e.g. bribes)." *See Brady*,

397 U.S. at 755. "If a defendant understands the charges against him, understands the

consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to

do so, the guilty plea. . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873,

882 (5th Cir. 1980) (en banc ), modified on other grounds, 646 F.2d 902 (5th Cir. 1981). "When

considering challenges to guilty plea proceedings, [courts] have focused on three core concerns:

absence of coercion, the defendant's understanding of the charges, and a realistic understanding

of the consequences of a guilty plea." *United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir.

1993).

Mr. Shelton argues that the trial court did not advise the petitioner of the nature of the

-17-

offenses (attempted first degree armed robbery and a "double billed" multiple offender) to which he pled guilty. However, the record shows that the plea was voluntary and intelligent. The record is clear that the state trial court made sure Mr. Shelton understood the offenses that he was pleading guilty to, by asking whether his attorney explained it to him, and whether Mr. Shelton initialed the waiver of constitutional rights form after the offense was explained to him by his attorney.[26] The state court also made sure that Mr. Shelton understood the nature of the multiple bill.[27] The record is clear that the state trial court carefully reviewed the rights Petitioner was waiving in pleading guilty and the sentence he would face.[28] Further, the Petitioner signed waiver forms indicating that he understood the rights he was waiving by pleading guilty to attempted first degree armed robbery and status as a second offender.[29] Petitioner has presented no evidence showing that he was not fully advised of his rights and the ramifications of his plea of guilty or

---

[26]   State Rec., Vol. 2 of 3, Transcript of Plea of Guilty, Multiple Bill Hearing and Sentencing, *State v. Shelton*, No 415-294, Dec. 13, 2000, pp. 1-3.

[27] *Id.* at 3-6.

[28] *Id.* at 1-7.

[29] State Rec., Vol. 1 of 3, Waiver of Rights - Plea of Guilty Multiple Offender - La.R.S. 15:529.1, *State v. Shelton*, No. 415-294, Dec. 13, 2000;  State Rec., Vol. 1 of 3, Waiver of Rights - Plea of Guilty Form, *State v. Shelton*, No. 415-294, Dec. 13, 2000.

that he was coerced into pleading guilty.[30] Thus, the Court finds that Petitioner's guilty plea was voluntary and intelligent.

With respect to Mr. Shelton's argument that the trial court improperly violated his right to withdraw his guilty plea, this Court notes that the decision of the trial court on whether to allow a defendant to withdraw his guilty plea is ordinarily based on La. C.Cr. P. Art. 559, which states that a court may "permit a plea of guilty to be withdrawn at any time before sentence." However, when a defendant moves to withdraw his guilty plea after sentencing, as Mr. Shelton did here, Louisiana state law indicates that the defendant must "assert his claim that his guilty plea is constitutionally infirm through post-conviction procedures." *State v. Stewart*, 902 So.2d 440, 448 (La. App. 5th Cir. 2005). Mr. Shelton has had an opportunity both on direct review and through state post-conviction proceedings to raise his arguments that the guilty plea was constitutionally infirm. For that reason, and because this Court cannot review decisions of the state court based

---

[30] Petitioner may argue that the state misrepresented that it's witness was ready to testify in court if he demanded a trial. However, as noted above, there is no indication that Mr. Lacey left the building and was unavailable to testify. There is also no reason to believe that if Mr. Lacey had left, the trial court would not have continued the trial to another day when Mr. Lacey could have been present to testify. Mr. Shelton has not presented an affidavit from the complaining victim, Mr. Lacey, indicating that he did not want to testify against Mr. Shelton and drop charges. Mr. Shelton cannot establish that the prosecutors made any misrepresentations about the strength of their case in an effort to induce Mr. Shelton to plead guilty.

on state law, the Court denies Mr. Shelton's claim. *See Bridge v. Lynaugh*, 838 F.2d 770, 772

(5th Cir. 1988) (citing *Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th Cir. 1984); *Skillern v.*

*Estell*, 720 F.2d 839, 852 (5th Cir. 1983), *cert denied*, 469 U.S. 873 (1984)).

## VI. Right to Confront Accuser

Mr. Shelton argues that his right to confront his accuser was violated by the fact that the

state never produced Mr. Lacey to testify at the hearing to withdraw Mr. Shelton's guilty plea.

The trial court ordered the state to produce Mr. Lacey for a hearing to withdraw Mr. Shelton's

guilty plea.[31] Based on a review of the record, it does not appear that Mr. Lacey ever appeared at

any of the hearings on whether to withdraw the guilty plea, and that Mr. Magee was the only

witness who appeared at a hearing. The trial court judge denied Mr. Shelton's motion to

withdraw his guilty plea without making references to any witnesses, simply stating that he was

"not going to take a chance on somebody else being out there dead a result of him being free. . .

He's had more than one chance and if he was serious about turning his life around, he would

have done so by now."[32]

---

[31] State Rec., Vol. 2 of 3, Docket Master, *State v. Shelton*.
[32] State Rec., Vol. 2 of 3, Transcript of Court's Ruling on Motion to Withdraw Guilty
Plea, *State v. Shelton*, No. 415-294.

The Confrontation Clause provides that in "all criminal prosecutions, the accused shall enjoy the right. . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The guarantees of a face-to-face confrontation with witnesses at trial and of the right to cross-examine those witnesses serve to protect the integrity of the fact-finding process in criminal trials. *Maryland v. Craig*, 497 U.S. 836, 850 (1990). To be entitled to relief on a claim regarding violation of his Sixth Amendment right to confrontation, Mr. Shelton must show not only that the right was in fact violated, but also that "there is 'more than a mere reasonable possibility that [the error] contributed to the verdict.'" *Wilkerson v. Cain*, 233 F.3d 886, 892 (5th Cir. 2000) (quoting *Woods v. Johnson*, 75 F.3d 1017, 1026 (5th Cir. 1996) (emphasis omitted)).

Mr. Shelton has not  made a showing that his right to confrontation was violated. "A guilty plea is more than a mere confession; it is an admission that the defendant committed the charged offense." *Taylor v. Whitley*, 933 F.2d 325, 327 (5th Cir. 1991) (internal citations omitted). Accordingly, "a guilty plea intelligently, knowingly, and voluntarily made generally waives all claims relating to events preceding the guilty plea, including constitutional ones, in a subsequent habeas proceeding." *Smith v. McCotter*, 786 F.2d 697, 702 (5th Cir. 1986). When pleading guilty, Mr. Shelton waived his right to confront his accusers and admitted to committing

-21-

the attempted first degree armed robbery.[33] Upon pleading guilty, Mr. Shelton no longer had a

right to confront Mr. Lacey, and it was within the trial court's discretion to determine whether

Mr. Shelton was entitled to withdraw his guilty plea. *See State v. Stewart*, 902 So.2d 440, 448

(La. App. 5th Cir. 2005). Because this Court cannot review decisions of the state court based on

state law, the Court denies Mr. Shelton's claim.

**V. Conclusion**

      Accordingly, IT IS ORDERED that the petition of MIKE SHELTON for writ of habeas

corpus under 28 U.S.C. § 2254 is DISMISSED WITH PREJUDICE. Judgment will be entered

accordingly.

      New Orleans, Louisiana this 21st day of November, 2005

                            HELEN G. BERRIGAN
                            U.S. DISTRICT JUDGE

---

[33] State Rec., Vol. 1 of 3, Waiver of Rights - Plea of Guilty Multiple Offender - La.R.S. 15:529.1, *State v. Shelton*, No. 415-294, Dec. 13, 2000;  State Rec., Vol. 1 of 3, Waiver of Rights - Plea of Guilty Form, *State v. Shelton*, No. 415-294, Dec. 13, 2000.